Lacey, C. J.
The plaintiff in error was indicted on December 3,1883, in the district court of Albany county, for the killing of James Blount. Trial was had upon the indictment, resulting in a verdict of guilty. The court below overruled the motion for a new trial, and pronounced judgment and sentence of death upon the verdict. The evidence is all in the record by bill of exceptions. The case is prosecuted here by petition in error. The petition in error makes 13 assignments of error, as follows:
“(1) That the court erred in overruling the motion of the defendant herein to quash the indictment in this cause found and returned; (2) that the court erred in overruling the motion of the defendant herein in his plea to the jurisdiction of the said district court; (3) that the court erred in overruling the motion of the defendant for a continuance of thesaid cause to the next ensuing term thereof; (4) that the said court erred in giving the instructions to the jury offered and asked for by and on the part of the prosecution, on the trial of said cause, and numbered 1, 2, 3, 4%, 5, and 6, respectively; , (5) that the court erred in refusing to give the instructions offered and asked for by the said defendant on the trial of said cause; (6) that the said court erred in its instructions and remarks given and addressed to the jury on the trial of said cause of„its own motion; (7) that thesaid court erred in overruling the motion of the said defendant for a new trial of the said cause on the ground of all and every reason therein alleged by the defendant, to the overruling of which motion the defendant excepted at the time; (8) that the jury in said cause, after being sworn therein, and before being discharged by the court, were permitted to separate, and did separate; (9) that the said court erred in admitting, over the objection of the said defendant on the said motion for a new trial in said cause, the affidavits of two of the jurors trying the same, to-wit, F. E. Allyn and ¡3. Í3. Woods, and also the affidavit of one Richard Tregoing, the bailiff in charge of said jury and jurors, to which the defendant then and there excepted; (10) that the said court erred in refusing to admit in evidence, and in support of a motion for a new trial in said cause, the affidavit of one Wm. J. McIntyre as to the hostility and bias of one F. E. Allyn, being one of the jurors who tried said cause, to which ruling of the court the said defendant then and there excepted; Til) that the verdict of the said jury that tried said cause was contrary to law and the evidence adduced at said trial of said cause; (12) that the verdict of the said jury did not define the crime of which the said defendant was found guilty, and was and is irregular, defective, void, and insufficient in law to warrant the said court to pass sentence and judgment thereon ; (13) that the said judgment of the said court and the sentence thereon is and was contrary to law and the evidence in said cause. ”
The third, fourth, fifth, sixth, eighth, eleventh, and twelfth assignments state causes for a new trial. Comp. Laws, p. 162, § 181. It was therefore necessary that they should be assigned as causes in the motion for a new trial in the court below, after which the question upon each would be properly raised by an assignment of error in this court calling in question the ruling upon the motion for a new trial. These assignments of error, therefore, do not present anything for the decision of this court, and will not be considered, although the same questions may be considered so far as they arise under the seventh assignment.
It remains to determine the questions raised by the first, second, seventh, ninth, tenth, and thirteenth assignments in the petition in error. The causes stated in the motion to quash the indictment are as follows:
“First, because the said indictment was not found and returned by a grand jury returned, tried, impaneled, sworn, and charged according to law at the said October, A. D. 1883,-term of this said court;' second, because the said indictment was not found hy the grand jury, drawn, returned, tried, impaneled, sworn, and charged, and afterwards discharged by the court at this regular term of said court; third, because the said indictment purports to be found by said grand jury *113 returned, tried, impaneled, sworn, and charged on the fifteenth day of October, A. D. 1883, by the said court, and thereafter discharged, and before said crime and crimes charged in said indictment were committed as alleged in said indictment; fourth, because the said alleged crime and crimes set forth in said indictment are therein charged as havingbeen committed ■on the thirtieth day of November, A. D. 1883, and long after said grand jury had been charged, sworn, and discharged; fifth, because said indictment is inconsistent, irregular, defective, and void; sixth, because the same does not state any crime or crimes, offense or offenses, punishable under the laws. of the territory of Wyoming. ”
15y reference to the Criminal Code (Comp. Laws, p. 152, § 101) it will be seen that a motion to quash reaches only defects which are “apparent upon the face of the record.” There is nothing apparent upon the face of the record in the case at bar which shows the existence of the facts relied upon in any one of the first four causes in the motion to quash. On the contrary, the record, after giving the venue, the title of the court, and of the ■cause, contains the following recitals:
■ “Be it remembered, that in the above •case in the said court there was returned into the said court, at the October term, A. D. 1883, thereof, by the grand jury in attendance thereon, and filed in said court ■on the third day of December, A. D. 1883, ■an indictment in said cause, in the words and figures following, to-wit:
“‘Indictment. Territory of Wyoming, •County of Albany — ss.: In the district court of the Second district, at a term of the district court begun and held in the town of Laramie City, within and for the county of Albany, on the fifteenth day ■of October, A. D. 1883, the jurors of the grand jury of the county of Albany, good and lawful men, then and there returned, tried, impaneled, sworn, and charged according to law to inquire, etc., * * * do present,’” etc.
If one grand jury was discharged and another impaneled, asís contended in argument, there is no intimátion of it“ upon the face of the record.” As to the fifth and sixth causes in the motion to quash, we are unable to find any material defect in the indictment, nor have counsel for the plaintiff in error attempted to point out any defect. There was no error in the ruling upon the motion to quash the indictment. The plea to the jurisdiction attempts to call in question, for irregularities not apparent upon the face of the record, the organization of the grand jury. Under our statutes that question-can only be raised by challenge or plea in abatement. See Comp. Laws, p. 151, § 100 et seq.; also, 1 Bisb. Crim. Broe. §§ 871-889.
Twenty causes are stated in the motion for a new trial. The purport of each may be stated as follows: (1) Is based upon an alleged separation of the jury after being sworn and before discharged; (2) alleges that the verdict is defective in not finding the degree of the crime; (3) that the verdict is not sustained by sufficient evidence and is contrary to law; (4) that the court erred in giving to the jury, of its own motion, certain instructions; (5,) (6,) (7,) (8,) (9,) (10,) (11,) (12,) and (13) are all based upon alleged errors in giving to the jury, at the request of the prosecution, certain instructions set forth in the motion; (14,) (15,) (16,) (17.) (18,) (19,) and (20) call in question the rulings of the court in refusing certain instruction's requested by the defendant.
The separation of the jury complained oE is thus set forth in the motion of the plaintiff in error for a new trial:
“That certain persons comprising in part the said jury, viz., Samuel S. Woods, T. J. Clark, and F. E. Allyn were, on Friday evening, December 7, 1883, separated from the rest of the jury in violation of law, and the admonition of this honorable court to the contrary; that while so separated as aforesaid, said Samuel S. Woods, T. J. Clark, and F. E. Allyn were not accompanied by a bailiff, and that such separation from the bailiff was in violation of law and the admonition of this honorable court; that while the said jurors were so separated as aforesaid, the said Samuel S. Woods was seen conversing with another person, who was not a member of the said jury, the bailiff in charge of the same, nor any officer of this honorable court; that the separation of the jurors aforesaid was during the progress of said trial.”
The affidavits read in support of the motion, supplemented by the counter-affidavits, showthat the facts were as follows: The jurors Clark and Allyn were separate from the remaining jurors on one occasion only, at which time they went to the cigar store of William Menas-see to purchase cigars. During the entire time of their separation they were in the *115 immediate charge of the proper officer. The separation of the juror Samuel Woods was when he, in company with eight other members of the jury, all in the immediate charge of the proper officer, was walking about for exercise. When they reached the Frontier Hotel, in Laramie City, the juror Woods, by permission of the officer, went into the hotel office, — the officer and the other jurors remaining just outside near the door, which remained open during all the time that. Woods was in the office. Woods did not go farther than three feet from the open door. The only persons with whom Woods had any conversation were one Piatt and one George Stokes. The conversation with Piatt was solely in relation to bringing Stokes to Woods. The conversation with Stokes was solely in relation to hauling lumber for Woods, — Stokes beingthenand before in the employ of Woods. Nothing was said by Woods, or any one in his hearing, in relation to the cause upon which be was then acting as a juror’. We think that the above facts do not show such a separation as could have prevented a fair trial of the cause.
It is urged that the verdict is defective in that it fails to find the degree of the offense. The verdict is in the following words:
“Territory of Wyoming v. George Cook. (Indictment for Murder.) We, the jury impaneled and sworn to try the issue in the above-stated case, do find the defendant, George Cools, guilty as charged in the indictment, ü. L. C. Beabd, Foreman. ”
Counsel state the objection to the verdict in these words:
“The indictment alleges in one count * * * thatthesaid George Cook, thesaid James Blount, in manner and form aforesaid, feloniously, unlawfully, willfully, purposely, deliberately, premeditatedly, maliciously, and of his malice aforethought, did kill and murder, etc. Here are charged (1) a willful, deliberate, and premeditated killing, which constitutes murder in the first degree; (2) a killing purposely and maliciously done, which constitutes murder in the second degree; and (3) an unlawful killing, which constitutes manslaughter.”
And from this it is argued that it is impossible to ascertain which one of these three separate charges is found against the prisoner, siuce each is charged in the indictment. The authorities cited by counsel upon the proposition that the verdict must state the degree of the offense, are, with one exception, from states where that requirement is made by statute, and the decisions are expressly based upon that statutory requirement. There is no such provision in our statutes.
The one exception above referred to is the case of Hogan v. State, 30 Wis. 428. But in that case the court say: “The indictment fails to show by apt and proper averments the degree of murder charged against the accused.” In the case at bar the indictment is in one count, and charges, by “apt and proper averments,” murder in the first degree, as defined by our statute. It i3 true that if certain portions of the indictment be stricken out there would remain the charge of murder in the second degree, and if then still other portions be stricken out, there would remain the charge of manslaughter. But, as the indictment stands, it charges but a single crime, and that is murder in the first degree. The inferior offenses are merged in this highest crime.
There is a provision in our statutes that, “upon an indictment for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged, and guilty of any degree inferior thereto. ” Comp. Laws, p. 159, § 157. The jury, therefore, under this indictment, with proper evidence, might have found the plaintiff in error guilty of murder in the second degree, or of manslaughter; but to do so they must have found (whether in express terms or not we need not decide) that he was not guilty of murder in the first degree; in other words, must have found against the territory as to certain averments contained in the indietment. Here the verdict finds in favor of the territory upon every averment. The jury have found the plaintiff in error “guilty as charged in the indictment.” “They have thus made the indictment a part of their verdict, and we are to consider the case as if they had found a special verdict, stating the facts precisely as they are set forth in the indictment.” Johnson v. Com., 24 Pa. St. 386. “A general verdict of guilty will be interpreted as guilty of all that the indictment well alleges. ” 1 Bish. Crim. Proc. (3d Ed.) § 1005a, and authorities there cited. See, also. People v. March, 6 Cal. 543; Cook v. State, 24 N. J. Law, 843; *117 Fitzgerrold v. People, 37 N. Y. 413; Kennedy v. People, 39 N. Y. 245; Leschi v. Territory, 1 Wash. T. 13; State v. Upton, 1 Dev. (N. C.) 513; O’Connor v. State, 9 Fla. 215; Bilansky v. State, 3 Minn. 427, (Gil. 313.) The verdict finds the plaintiff in error guilty of murder m the first degree, and is sufficient.
The plaintiff in error, some eight hours before the shooting, gave as a reason for reclaiming his revolver from the repair shop that he wanted to use it. At one time during the day he threatened conditionally to “shoot off the eye-brows and toe-nails” of the deceased, and at another time he pulled off his coat to fight the deceased, who refused to fight. About two hours before the shooting the proprietor of Mechanics’ Hotel asked' the prisoner to allow him to keep the revolver until the prisoner’s “passion” cooled down. The prisoner declined to part with the revolver, saying “he was going to use it.” At the time of the homicide, the prisoner, meeting the deceased, at once began to quarrel with him, or, as the witness states it, “commenced to sass” him. The deceased urged that they should not quarrel, and, in token of his friendly feeling, invited the prisouer to walk into the saloon near where they were standing, and have a drink with him. The prisoner refused, and continued the abuse, whereupon the deceased said" "T have a good mind to smash your nose.” The prisoner then asked, “Do you mean what you say?” The deceased replied, “Yes.” The prisoner then, without further words, pulled his revolver from its scabbard, and shot the deceased through the head, killing him instantly. All this occurred on November 29, 1883, in Albany county, in this territory. Counsel contend that the evidence shows that the slayer was intoxicated at the time of the homicide. Under out statute, voluntary drunkenness is not an excuse for any crime, but it is provided that “wherea crime rests in intention, the inebriated condition of the defendant at the time of committing the offense may be proven to the jury as bearing upon the question of intention.” Comp. Laws, p. 249, § 9.
There was considerable conflict in the evidence concerning the condition of the defendant with reference to sobriety. This was properly left to be weighed by the jury as bearing upon the question of intention, and we cannot say that it did not receive full consideration, northat the jury, under all the evidence, were not warranted in finding against the prisoner upon the question of intention. The verdict is sustained by sufficient evidence and is not contrary to law. The plaintiff in error did not object, nor in any way except, in the court below to the instructions given by the court upon its own motion, and hence no question arises upon those instructions here. Counsel seem to controvert seriously the correctness of but one of the instructions given at the request of the prosecution. Nevertheless, we have carefully considered each of the other instructions so given, and do not find that there was any error in giving them. The instruction earnestly controverted is as follows:
“No.l. In order to constitute murder in the first degree, the killing must be done,not only with malice, which is presumed when the killing is with a deadly weapon used in a deadly manner, but it must also be done with premeditation and deliberation, and willfully and purposely ; but in order that there should be deliberation and premeditation it is not necessary that the intention to kill should have existed in the mind of the slayer any appreciable period of time prior to the killing. If che deliberate and premeditated intention to kill is determined upon in the mind of the slayer, and he immediately carries that intention into execution, his offense is murder in the first degree, and it matters not whether the period of time between forming such intention and the killing was a few seconds or many hours.”
The objection to this charge is thus stated by counsel: “This instruction puts upon the defendant the proof of self-defense, or any other ground of excusable or justifiable homicide. ” There is nothing in the evidence tending to show justification or excuse. When, from all of the circumstances surrounding the homicide as detailed in evidence by the prosecution, nothing is disclosed in any way tending to justify or excuse the homicide, it'is incumbent upon the defendant to show such justification or excuse, if any there be. Bee 1 Bish. Brim. Proc. (3d Ed.) § 1050, and authorities there cited; also 2 Bish. Crim. Proc. § 599, and authorities there cited. In this case the defendant has made no attempt in that direction, but, on the contrarv swears that he knew nothing of the killing, -and hence cannot *119 compláin that the charge is silent upon that question.
Of the instructions asked by plaintiff in error, those refused by the court are the following:
“Ko. 2. The jury are further instructed that if they believe from the evidence that the defendant, when he encountered the deceased at the time of the occurrence, they at once became engaged in a quarrel, and that during said quarrel, and in the heat of passion incident thereto, the defendant killed the deceased then and there, the jury are instructed that they cannot convict of murder, either in the first or second degree.”
“No. 4. If the jury believe from the evidence that the defendant had'on his person a deadly weapon, but had not armed himself for the purpose of using the same against the deceased, but, while being thus armed, he became involved in a difficulty with the deceased, and then took the life of the deceased with such weapon, then the presumption of malice cannot be inferred from the fact of his using such deadly weapon.
“No. 5. You are further instructed that if you are satisfied from the evidence that the defendant killed the deceased, yet if the jury are satisfied from the evidence that the prisoner had reasonable grounds to apprehend a design on the part of the deceased to take the prisoner’s life, or to do him great bodily harm or great personal injury, and that there was imminent danger of such design being accomplished, then they must find the prisoner not guilty.
“No. 6. The jury are further instructed that if they believe from the evidence that the defendant and the deceased were at the time of the occurrence engaged in a drunken brawl, and that, while so engaged in a drunken brawl, the defendant took the life of James Blount, then premeditation cannot be inferred, and the jury cannot convict the defendant of murder in any degree.”
“No. 8. The court instructs the jury that if there is any other reasonable hypothesis arising out of the evidence except the one that the defendant unlawfully killed the deceased, then the defendant is entitled to the benefit of such hypothesis, and he ought to be acquitted.”
“No. 10. If the evidence of the witnesses for the prosecution in this case shows any contradiction as to any of the circumstances oí the alleged shooting of JameR Blount, as the drunkenness or intoxicated condition of the defendant at the time of such alleged shooting, you are bound to give the preference to the testimony of such witnesses, if you believe it to be equally true, that is most favorable to the defendant.”
“No. 16. The court instructs the jury that the policy of our law deems it better that many guilty pei'sons should escape rather than that one innocent person should be convicted and punished. So that unless the jury, after a careful and thorough consideration of all the evidence in the case, can say and feel that every material allegation in the indictment is proved beyond a reasonable doubt, the jury should find the defendant not guilty. ”
We will not attempt to point out all of the objections to the above instructions. There was evidence, at least, tending to show that the plaintiff in error, several hours prior to the homicide, had threatened to kill the deceased, and that he sought and pressed whatever of quarreling there was, for the purpose of furnishing an occasion for the killing, and that the deceased was at the time aware of the threats and the purpose. In the light of that evidence instructions numbered 2, 4, 6, and 6 were correctly refused. All that is material in instructions numbered 8 and 16 had already been given in instructions 1, 7, 9,11, and 14 of those asked by the prisoner; hence it was not error to refuse further repetition. As to instruction 10, we think that the jury were not bound to prefer one truth above another “equally true.” There was no error in overruling the motion for a new trial. The affidavits of jurors and the bailiff having the jury in charge are admissible in support of the verdict. Such, we think, is the weight of recent authority. There was', therefore, no ei’ror in admitting the affidavits mentioned in the ninth assignment of error.
The motion for a new trial contains no averment concerning any hostility or bias of the juror Allyn. Nor is there any averment in the motion for a new trial which the affidavit mentioned in the tenth assignment of error in any way tends to support. Therefore, without reference to the question whether or not it was in the nature of hearsay, the affidavit was prop *121 erly excluded by the court. The thirteenth error assigned in the petition in error raises no question that has not been already passed upon in this opinion. The judgment of the court below is in all things affirmed, and the court now appoints Friday, .the twelfth day of December, in the year of our Lord 1884, for the execution of the sentence pronounced by the court below.
All the judges concurring.