## PARKER v. STATE.

(No. 877;  Decided December 23rd, 1916;  161 Pac. 552.)

Appeal and Error—Motion for a New Trial—Exceptions Below—
Errors Not Excepted to Below—Presentation of Errors Be-
low—Criminal Law— Review— Instructions— Homicide— Pre-
meditated Malice—Premeditation—"Murder in First Degree"—
"Murder in Second Degree"—Punishment—Justification—Ap-
prehended Danger—Self-Defense—Instruction as to Verdict of
Murder in First Degree Without Capital Punishment—Re-
marks of Court.

1.  In a homicide case where a defendant has been tried, con-
victed and the death penalty imposed, if it appears from
an examination of the entire record on appeal, that such
fundamental errors have been committed upon the trial as
amount to a denial of justice, and that defendant has been
deprived of his right to a fair and impartial trial, and it
further appears that the court should have granted defend-
ant more time in the exercise of the discretion conferred
by Compiled Statutes, 1910, Section 6287, within which to
file a motion for a new trial, Supreme Court Rule No. 13,
relating to the assignment and presentation of errors be-
low, will not be strictly enforced.

2.  Where error has been committed in a capital case, the effect
of which, as appears from the record, amounted to a de-
nial of substantial justice and deprived defendant of a fair
trial, the judgment will be reversed, though proper excep-
tions were not taken at the trial.

3. In a capital case; a general exception to the instructions is sufficient, where the instructions as a whole present an erroneous view of the law, as applicable to the facts of the case.

4. An instruction in a homicide case that "to constitute 'premeditated malice' no particular time need intervene between the formation of the intention and the act; it is enough if the intent to commit the act with the full apprehension of the result likely to follow, was present at the time the act was committed," is erroneous, as the jury was in effect told that the defendant could have been found guilty of murder in the first degree, if the jury found from the evidence that the intention to kill was present in the mind of defendant at the time the act was committed, which under our Statute would constitute murder in the second degree.

5. It is the premeditation, that is thinking it over, deliberating upon, weighing in the mind beforehand, resulting in a deliberate intention to kill, which, under the Statute, constitutes the killing, murder in the first degree.

6. An instruction in a homicide case, which, after telling the jury that they could qualify their verdict by adding the words "without capital punishment," stated that, in case of conviction, it was the duty of the court to fix the penalty in its discretion within the limits prescribed by statute, was erroneous, in that the jury would naturally conclude therefrom that, if they did not qualify their verdict, the court had discretion to impose either the death penalty or life imprisonment.

7. An instruction that to justify a homicide a person must be in the lawful pursuit of his business and without blame was too broad a statement.

8. To justify a homicide, it is not essential that the danger be in fact "apparent and imminent," but it is sufficient that the assault is of such a character as to create in the mind of defendant a reasonable belief that the charge is imminent and that it is necessary to take the life of his assailant in order to protect himself from death or great bodily harm. If the circumstances are such as to create in the mind of a reasonable man an honest belief that he is in such imminent danger, and so believing he kills his assailant, he is excusable.

9. Where the attitude of the court toward counsel for defendant in a murder case, as shown by statements and remarks of the court in the presence and hearing of the jury during the trial, is calculated to belittle and dispar-

age such attorney and create the impression that there is little, if anything, in the defense, thus depriving defendant of a fair and impartial trial, the judgment will be reversed.

ERROR to District Court, Lincoln County; HON. DAVID H. CRAIG, Judge.

Daniel Parker was convicted of murder in the first degree and brings error. The material facts are stated in the opinion.

*R. R. Rose,* for plaintiff in error.

Defendant was deprived of his right to a fair and impartial trial by reason of prejudicial statements of the court in the presence of the jury, errors in the exclusion or admission of and the giving of improper and the refusal of proper instructions; failure of the court to so control and conduct the trial so that a fair trial is not secured, is reversible error. (42 S. E. 226.) The weight and sufficiency of evidence is for the jury without suggestions from the court. (12 Cyc. 590-592.) Any intimation by the court in the course of the trial, or in the instructions by a statement, a question, conduct or looks, as to his opinion on any material fact or as to the veracity or credibility of any witness is error. (Blachfield, Secs. 47-49-50-51.) The record shows a series of interruptions, improper remarks and statements made by the court calculated to impress the jury with the idea that defendant was guilty and that there was little or nothing in his defense. Methods of defendant's counsel were also *unjustly* criticized, as appears from the record. (12 Cyc. 538, 83 N. W. 279; Peeples v. State, 29 S. E. 691; People v. Hull, 49 N. W. 288; 124 Mo. 448; 27 S. W. 1111.) Defendant's counsel was deprived of the right to cross-examine witnesses; rulings of the court in this regard were unreasonable, arbitrary and prejudicial to defendant. It is error for the court to make any remark or inquiry in the presence of the jury which would indicate his opinion as to such facts. (12 Cyc. 541; 8 So. 670; 52 Pac. 833; 34 Pac. 852; 63 N. E. 517.) Statements made by the court to defendant's coun-

sel such as "keep your seat," "cut that stuff out, there is
nothing to it," "don't be sputtering around like a chicken,
there is nothing to it," "if you got a case you will present
it," etc., etc., were calculated to humiliate and discourage
defendant's counsel. (12 Cyc. 541; 110 Mass. 179; 27 N.
E. 362.) The court erred in taking a recess about 4:00
o'clock in the afternoon and in failing to return until the fol-
lowing morning, the regular adjournment being taken and the
jury admonished by the Clerk of the Court. Testimony
showing that defendant had cause to fear deceased was er-
roneously excluded. Instruction No. 6 contains an erro-
neous statement of the law as to what constitutes premedi-
tated malice. (Section 5789, Comp. Stats. 1910; Ross v.
State, 57 Pac. 924.) Instruction No. 7 contains an improper
and incorrect statement of the law. The ninth instruction
is erroneous in assuming that the homicide was done with a
wicked mind and in referring to the danger as it might ap-
pear to a "reasonable, cautious and prudent man," as the
test of his right to use force. The entire instruction is incon-
sistent with instruction No. 27. (Blashfield's Instructions,
Secs. 71-78.) The fifteenth instruction is erroneous in as-
suming the existence of facts not in the evidence. (Bran-
son's Instructions to Juries, Sec. 84.) Instructions must be
pertinent to the facts charged in the indictment and shown
by the evidence adduced. (Id. Sec. 80.) Instruction No. 18
presents an improper and incorrect statement of the law
with reference to the right of the jury to qualify their ver-
dict of murder in the first degree by adding the words "with-
out capital punishment." It was error to instruct that the
law casts the burden and duty upon the court in case of con-
viction to fix the penalty in its discretion; under it, the
jury were warranted in supposing that if it made no recom-
mendation of "without capital punishment," the court would
have the right or discretion to inflict punishment less than
life imprisonment. (Blashfield's Instructions, Sec. 187.) An
incorrect instruction as to penalty is error. The twenty-
first instruction that "in order to justify or excuse homicide,
the person must be in the lawful pursuit of his business and

without blame" is incorrect. It is not every fault or wrong-ful act for which defendant might subject himself to blame, that would deprive him of the right of self-defense. (21 Cyc. 805.) Defendant may not have been without blame and yet entitled to exercise the right of self-defense. In-struction No. 22 with reference to expert testimony was er-roneous, not being based on the evidence. The court erred in refusing defendant's instructions Nos. 35 and 42 on the subject of self-defense. (Stanley v. State, 62 Tex. Cr. Reps. 306, 137 S. W. 703.) Instruction No. 38 requested by defendant was refused, which refusal was reversible error. The court erred in not granting defendant's counsel further time within which to file a motion for a new trial upon good cause shown. (Section 6287, Comp. Stats. 1910.) Defendant was because of unfortunate circumstances and without fault on his part or of his counsel, prevented from a full compliance with all the rules of the law and of this court, as to the manner of presenting to this court the errors complained of; courts will review instructions given or refused, without objection having been made, and excep-tion taken in the trial court, especially in capital cases where substantial justice requires it. (People v. Leonardi, 143 N. Y. 360; Blashfield, Sec. 364; People v. Burk, 115 Pac. 1101; Piel v. People, 119 Pac. 687; Walcher v. Terri-tory, 90 Pac. 887; Seng v. State, 122 Pac. 631; Woody v. State, 136 Pac. 430; 1 Ohio Dec. 229.)

*D. A. Preston,* Attorney General, for the State.

It is the settled practice of this court that nothing which could have been properly assigned as a ground for a new trial in the court below, will be considered in this court un-less properly presented by motion for new trial, which was overruled and an exception taken below. (Cook v. Terri-tory, 3 Wyo. 110; Boulter v. State, 6 Wyo. 66; Ross v. State, 16 Wyo. 285; Hogan v. Peterson, 8 Wyo. 549; Wil-son v. O'Brien, 1 Wyo. 42; Wolcott v. Buchman, 3 Wyo. 335; Casteel v. State, 9 Wyo. 267; Todd, et al., v. Peter-son, Admr., 13 Wyo. 513; Delaney v. State, 14 Wyo. 1;

Kopella v. State, 15 Wyo. 398; Rule 13 Supreme Court.) Points not argued in the brief will be deemed waived. (Ross v. State, 16 Wyo. 285.) Errors of law committed by the court on the trial must be specified with particularity. (Scoville v. Chapman, 17 Ind. 470; Miller v. State, 3 Wyo. 658; State v. Scott, 214 Mo. 257; Territory v. Cordova, 11 New Mex. 367; Smith v. State, 46 Tex. Crim. Rep. 267; Williams v. State, 124 Ga. 782; Westphal v. Nelson, 25 S. D. 100; Boburg v. Prahl, et al., 3 Wyo. 325; Adkins v. State (Ga.), 72 S. E. 897; C. B. & Q. R. R. v. Morris, 16 Wyo. 308; Dickerson v. State, 18 Wyo. 440.) Errors assigned in the admission or exclusion of evidence must designate the evidence intended to be referred to. (Foster v. State, 59 Ind. 481; Walrath v. State, 8 Neb. 80; Edmunds v. State, 34 Ark. 734; Anderson v. Terr., 13 Pac. (N. M.) 21; Sweet v. State, 90 Ga. 315; Benson v. State, 119 Ind. 483.) The court's interruption during the examination of witness Haddenham was a remark made by counsel for the State and no exception or objection was taken. Counsel for defendant was also evidently attempting to put an answer into the mouth of the witness and should not be heard to complain of the court's criticism. Other statements made by the court were caused by defendant's counsel making statements instead of asking questions of the witness and was not directed to the evidence. Defendant's counsel had been admonished by the court to keep his seat and remarks of the court made upon his failure to do so, while lacking in dignity were not prejudicial. Few of the errors complained of relating to statements made by the court were objected to, or exceptions taken thereto, and for that reason are not reviewable. (State v. Duestrow, 137 Mo. 44; Stripling v. State, 47 Tex. Cr. Rep. 117; Burns v. State (Tex.), 66 S. W. 303; State v. Brown, 100 Iowa, 50; State v. Whitworth, 126 Mo. 573; State v. Drake, 128 Iowa, 539; Lingerfelt v. State, 125 Ga. 4; Dailey v. State (Tex.), 55 S. W. 821; Slinn & Shorty v. State (Ark.), 186 S. W. 308.) Proof of good character to be relevant must be con-

fined to the nature of the offense under the charge and bear some pertinent analogy to it. (Wharton's Criminal Evidence, Vol. 1, 10 Ed., Sec. 59; U. S. v. Chung Sing, 4 Ariz. 217; Kee v. State, 28 Ark. 155; People v. Chrisman, 135 Calif. 282.) Declarations of defendant made before the day of the homicide are not part of the *res gestae.* (State v Evans, 65 Mo. 575; State v. Umfried, 76 Mo. 404; Colquit v. State, 107 Tenn. 381; Harrell v. State, 39 Tex. Cr. Rep. 204; Red v. State, 39 Tex. Cr. Rep. 414.) Whether witness Penrod was employed by the Kemmerer Coal Company was not a material issue and testimony thereon was not impeachable. (State v. Flanders, 156 Pac. 39.) The assignment with reference to failure to adjourn the court on May 13th, and in failing to admonish the jury is not sufficiently presented in counsel's brief to enable a clear discussion as to whether the occurrence was prejudicial. The objection to the instructions was made to the instructions as a whole, and unless all of the instructions were erroneous, the objection is insufficient. (Dickerson v. State, 18 Wyo. 440.) Instruction No. 8 was a correct statement of the law. (State v. Privitt, 175 Mo. 207.) Instructions requested by defendant were either covered by instructions already given, were incorrect statements of the law, or were not based upon the evidence, and there was no error in refusing them. Sections 6236 and 6288, Comp. Stats. 1910, state the causes for granting a new trial, certain of which must be sustained by affidavits, and there being no affidavit in support of assignment No. 11, it is not before this court for consideration. The evidence on the question of self-defense was conflicting and having been passed upon by the jury will not be disturbed by this court. (Horn v. State, 12 Wyo. 30.) The granting of time exceeding ten days to file a motion for a new trial is within the discretion of the trial judge, and unless it affirmatively appears that there was an abuse of discretion in this regard, the ruling will not be disturbed on appeal.

BEARD, JUSTICE.

The plaintiff in error, Daniel Parker, was convicted of the crime of murder in the first degree, in the district court of Lincoln county, and sentenced to suffer death. From that judgment he brings the case to this court, assigning numerous errors and irregularities occurring on the trial, which his counsel contends were prejudicial and deprived the defendant of a fair and impartial trial.

An information charging the defendant with murder in the first degree was filed in the district court May 3, 1915. May 4, 1915, he was arraigned, and being without counsel and it appearing that he was without means to employ counsel, the court appointed R. R. Rose, Esq., an attorney at law, to defend him. The trial was commenced May 10, and a verdict of murder in the first degree was rendered by the jury May 15. A motion for a new trial was filed May 26, was denied the same day, and judgment pronounced May 27.

The Attorney General insists that a number of alleged errors discussed by counsel for plaintiff in error are not properly before the court for consideration because not sufficiently specified in the motion for a new trial. In answer to that contention counsel for plaintiff in error seeks to excuse the imperfections in the motion on the ground that he was denied sufficient time by the court within which to prepare the motion. It appears that on May 24 and within the ten days allowed by statute for filing such motion an application for ten days extension of time within which to do so was made, supported by the affidavit of counsel, in which affidavit he states that the verdict was returned on Saturday afternoon, May 15, and that at 10 o'clock on the following Monday (May 17) by appointment of the court as attorney to defend another person (one Cirej) also charged with murder in the first degree, he was required to enter upon the trial of said case, which trial was not concluded until Saturday afternoon, May 22. That during said time the official court reporter who reported this case was constantly engaged in court and could not furnish counsel with the evidence or remarks of the court, and that for those

reasons he was unable to prepare a more complete and specific motion. The application was heard on May 26, at which time the court extended the time for filing the motion until 2 o'clock p. m. the following day. Those facts are not disputed and so far as they appear by the journal entries are fully sustained. The statute (Sec. 6287, Comp. Stat. 1910) provides that the motion, except for newly discovered evidence, shall be filed at the term and within ten days after the verdict was rendered, unless additional time be granted by the court upon good cause shown. We think in the circumstances in this case the court in the exercise of its discretion and in justice to defendant should have allowed more time than was granted within which to file the motion; and for that reason the rule requiring the grounds for a new trial to be specifically stated should be enforced with less strictness than where such conditions do not exist. The rule (Rule 13, S. C. Rules) "Nothing which could have been properly assigned as a ground for a new trial in the court below will be considered in this court, unless it shall appear that the same was properly presented to the court below by a motion for a new trial," etc., is a statutory one and has been and should be enforced by this court, especially in civil and in criminal cases of less magnitude than the one before us; but where a defendant is put upon trial for his life, convicted, and the extreme penalty imposed, if it appears to this court from an examination of the entire record that such fundamental errors have been committed upon the trial as to amount to a denial of justice and that the defendant has been deprived of his right to a fair and impartial trial, it will not insist upon a rigid enforcement of the rule. The Attorney General also invokes the application of the statute defining exceptions and the time and manner in which they are to be taken; and calls attention to the fact that a number of matters assigned as error were not excepted to at the time, and therefore cannot be considered. He has cited in his brief quite a number of cases decided by this court in which the rule was sustained and applied. Many of them are civil cases, and of the

criminal cases cited but one of them (Cook v. Territory, 3
Wyo. 110, 4 Pac. 887) was a capital case; and it does not
appear that the instructions given by the court on its own
motion in that case and to which no exceptions were taken
were claimed to be fundamentally erroneous. The taking of
the life of a human being as a punishment for crime has
not in later years met with general approval; and appellate
courts have inclined to the view that in capital cases it is
not only their right but their duty to examine the record for
the purpose of ascertaining whether or not the defendant
has been deprived of his constitutional right to a fair and
impartial trial. But it is only in those cases where it clearly
appears that such fundamental errors have been committed
on the trial as to deprive the defendant of his substantial
rights, or that the ruling, decision, or other matters com-
plained of clearly appear to have been prejudicial to the
defendant that the judgment should be reversed; and
especially so where exceptions have not been timely taken,
or the errors have not been fully stated in a motion for a
new trial. (Seng v. State, 20 Wyo. 222, 122 Pac. 631.)
However, if it clearly appears from the record that such
fundamental and prejudicial error has been committed as
to amount to a denial of substantial justice, or to deprive
the defendant of a fair trial, the court should not hesitate
to reverse the judgment and grant a new trial, although
proper exceptions were not taken at the time. (14 R. C. L.
808; Thornley v. State, 36 Tex. Crim. Rep. 118, 34 S. W.
264, 35 S. W. 981, 61 Am. St. 836; Patten v. United States,
42 App. Cases, D. C., 239; Hopt v. Utah, 110 U. S. 574,
4 Sup. Ct. 202, 28 L. Ed. 262; Wiborg v. United States,
136 U. S. 632, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289; An-
derson v. State, 8 Okla. Crim. 90, 126 Pac. 840, Ann. Cases
1914C. 314; Vickers v. United States, 1 Okla. Crim. 452,
98 Pac. 467; People v. Burk, 159 Cal. 783, 115 Pac. 1101.)

The defense in this case was self-defense; and other than
the deceased and defendant there were no witnesses to the
affray, if any there was, until after the first of the four
shots which were fired by defendant, one of which caused

the death of deceased. Defendant testified that deceased assaulted and knocked him down before he fired the shots and that he shot in self-defense.

The record discloses that at the time the instructions of the court were given to the jury, the defendant's counsel objected and excepted to "instructions numbered eight, nine, ten, eleven, thirteen, fifteen, eighteen, nineteen, twenty-one and thirty-two," and the giving of those instructions were in like manner assigned as error in the motion for a new trial. The Attorney General, in his brief, insists that those instructions cannot be here reviewed for the reason "that the objection is to these instructions as a whole, and not individually, and that if any instruction in the group is correct, the other instructions will not be considered." He cites Dickerson v. State, 18 Wyo. 440, 111 Pac. 857, 116 Pac. 448, in support of the contention. But that was not a capital case and the objection there was quite different from that in this case where certain instructions only and not all were objected to; and aside from what we have already said as to capital cases, the present case comes within the rule announced in Palmer v. State, 9 Wyo. 40, 59 Pac. 793, 87 Am. St. Rep. 910, where it was held that where the instructions as a whole present an erroneous view of the law as applicable to the facts of the case, a general exception is sufficient. The eighth instruction was one of those excepted to, and which counsel for the State argue correctly states the law. It is as follows:

"Malice means that condition of mind which prompts one to do a wrongful act intentionally, without legal justification or excuse. It does not mean mere spite, hatred, or ill-will, but signifies that state of disposition which shows a heart regardless of social duty and fatally bent on mischief; and premeditated malice means that the act was done with malice and premeditation. Malice, as used here, may be presumed from the intentional use of a deadly weapon in a manner likely to produce death."

Had the court not erroneously defined premeditated malice in the sixth instruction, this one might not have been

erroneous or prejudicial. But by the sixth instruction (not excepted to at the time) the jury was told, "To constitute premeditated malice no particular time need intervene between the formation of the intention and the act; it is enough if the intent to commit the act with the full appreciation of the result likely to follow, was present at the time the act was committed." Applying that definition of "premeditated malice" to that term as it is used in the eighth instruction, the jury was in effect told that the defendant could be found guilty of murder in the first degree if the jury found from the evidence that the intention to kill was present in the mind of defendant at the time the act was committed, which under our statute would constitute murder in the second degree only, and is not punishable with death. The statute declares that "whoever purposely and with premeditated malice, * * * * kills any human being, is guilty of murder in the first degree." And "whoever purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree." It is premeditation, that is, thinking over, deliberating upon, weighing in the mind beforehand, resulting in a deliberate intention to kill which constitutes the killing, murder in the first degree. The killing, however malicious, which is not the result of premeditation is second degree murder only.

Under statutes like ours which make premeditation the distinction between murder in the first degree, and murder in the second degree, the foregoing instructions were clearly and fundamentally erroneous and misleading, and could not have been otherwise than prejudicial to defendant. The error in the instruction was clearly stated in Ross v. State, 8 Wyo. 351, at 384 et seq., 57 Pac. 924; and while it may be said that the point was not necessary to the decision in that case, the court said it deemed it proper to discuss the question and announced its conclusion for assistance and guidance in future trials; with which conclusion we fully agree, and do not deem it necessary to here repeat what was there said. See also State v. Moody, 18 Wash. 165, 51 Pac.

356; People v. Maughs, 149 Cal. 253, 86 Pac. 187; and cases cited in Ross case.

The jury was instructed (No. 18) : "You are instructed that with the punishment which would follow a verdict of conviction you have nothing whatever to do, further than this: The statute provides that in case you find the defendant guilty of murder in the first degree, you may qualify your verdict by adding thereto the words 'without capital punishment.' In that event the death penalty could not follow, and the only sentence which the court would have power to impose would be life imprisonment. The right to add these words to your verdict, and thus limit the power of the court to a sentence of life imprisonment, is an absolute right given you by the statute, and your right to do so cannot be questioned, either by the court or anyone else. Aside from this one limitation, in this court the law casts the burden and duty upon the court, in case of conviction, to fix the penalty in its discretion within the limits prescribed by the statute." * * * * The jury was not otherwise informed as to the limits of punishment imposed by the statute, and, from the language used, would naturally conclude that if it did not qualify its verdict as stated, then it was within the power of the court in its discretion to impose either the death penalty, or life imprisonment, which is not the law; but the jury may have taken that view of it as it returned its verdict without adding the words "without capital punishment."

Again, in instruction No. 21, the jury was told: "In order to justify and excuse homicide a person must be in the lawful pursuit of his business and without blame, and the danger menacing him must have been present, apparent and imminent; and. at the time of the killing he must be acting under a reasonable belief that he is in imminent danger of death or of suffering great bodily harm from the deceased; and that it is necessary for him to kill the deceased in order to prevent the death of or great bodily harm to himself. The apparent necessity which will excuse the

taking of human life under the doctrine of self-defense, in a case of homicide, involves two considerations: First, the defendant himself must have entertained an honest belief in the existence of such necessity; and, second, the circumstances surrounding him must have been such as to impress a reasonable man, under the same state of facts, with the belief of his imminent peril, and of the existence of an urgent necessity to take the life of his assailant, as the only apparent alternative of saving his own life, or else of preventing the infliction on him, the defendant, of great bodily harm." * * * * This instruction was excepted to and assigned as error in the motion for a new trial. The instruction is erroneous in several particulars. The statement that "to justify and excuse homicide a person must be in the lawful pursuit of his business and without blame," is too broad a statement; and that the danger must have been "apparent and imminent" is not true. The assault must be of such character as to create in the mind of the defendant a reasonable belief that the danger is imminent and that it is necessary to take the life of his assailant in order to protect himself from death or great bodily harm; but it is not necessary that the danger be in fact imminent. If the circumstances are such as to create in the mind of a reasonable man an honest belief that he is then in such imminent danger, and, so believing, he kills his assailant, he is excusable. This instruction as to the law of self-defense is quite lengthy and contains other statements which if not clearly conflicting are at least confusing and misleading.

A number of statements and remarks of the court in the presence and hearing of the jury during the trial are assigned as error prejudicial to defendant. We shall not refer to all of them. The homicide occurred on the evening of February 21, 1915, some time soon after 7 o'clock, on a vacant lot in the town of Kemmerer. One Haddenham was the first witness called for the prosecution and testified on direct examination that he was in a room behind a saloon

with four or five other men "and Dan Parker (defendant)
come there about 7 or a little after, come in the door. I
was lying on a bench behind the table, he came in the door
and said 'Haddenham, come out here, want to see you';
I got up, went straight to him; as soon as I got out, he says
to Mink Porter (the deceased) 'you have mistreated me';
I grabbed him by both arms, pushed him out of the door,
and says: 'you don't want any trouble here, Dan.'" Wit-
ness testified that defendant's attitude toward deceased was
not threatening. The court asked the witness: "Was there
any trouble between defendant here and Mink Porter while
you were there?" To which he answered, "No, sir." On
the cross-examination the following occurred:

By Mr. Rose: "Q. How far into the room did the de-
fendant come? A. Just to the edge of the door. Q. That
is, he opened the door and just entered so as to be inside
the room, but really back of the door, is that right? By
the court: He didn't say that. Don't repeat your imagina-
tion to. this court. Mr. Rose: We except. By the court:
The court is right, there is no such evidence. Take it all
down. Mr. Rose is afraid something will creep in." A
little further on witness was asked: "Did you notice posi-
tion of both of his hands as you were walking toward him?
A. Yes, sir. By the court: You don't have to answer those
questions that way. Mr. Rose, if you don't cross-examine
the witness in line of direct examination, the court himself,
without exception, will not permit you to go any further.
Mr. Rose: I want to make myself plain to the court. The
direct examination has covered everything that occurred in
that house, has it not? Now, if the court please, I wish to
show by this witness on cross-examination that the defend-
ant when he entered this house neither said nor did any-
thing indicating any intention to mistreat or attack the de-
ceased. By the court: Now you stop right here; this
court wants you to understand, with other members of the
bar, that if you have got a case you will present it, but not
through supposition, but only what is founded on the evi-

dence of the direct examination; don't say to the witness, you have testified, you have done so and so, ask him what the facts are—that is what the jury wants." Again, by Mr. Rose: "Q. Now, Mr. Haddenham, the defendant entered the west door of the room, you were lying on a bench at the east end of the room? A. Yes, sir. By the court: You hadn't said that; he said you did. Cross-examination can't put the witness' testimony in his mouth. I never heard anything about him lying on a bed anywhere. If they did, they know more than you and I do."

One Penrod, a witness for the prosecution, testified that just before the shooting he walked along the street behind defendant, saw him cross the street and heard a shot. He was asked: "What did you do after you heard the first shot? A. I turned around, could see the form of Dan Parker past the shop corner; two more shots fired, one right after another, then a pause. Dan moved kind of northeast, then another shot. By the court: What did you see—Dan Parker or his ghost?" The defendant was a witness in his own behalf and testified that he had lived in Kemmerer two years, came from Kansas City, that his wife died December 1, 1914, and that he took her body to Kansas City for burial. He was then asked: "Did you then return to Kemmerer? A. Yes, sir, I did. By the court: Wait a minute, ask him some legal question. I want to be fair in this case, you try it legally, Mr. Rose." The foregoing we think discloses the attitude of the trial court toward the counsel for defendant and that it was calculated to belittle and disparage the attorney for defendant before the jury, and to convey to the jury the impression that there was little if anything in the defense. A number of other matters are complained of as prejudicial, to which we do not think it necessary to refer, as they are not likely to occur on another trial. Whether the evidence was sufficient to warrant the verdict returned by the jury we express no opinion; but whether innocent or guilty, the defendant was entitled to a fair and impartial trial,

which from a careful examination and consideration of the record in the case we are convinced was not accorded to him. He was entitled to have the crime with which he stood charged correctly defined; to have the law of self-defense correctly stated; to have his defense presented without disparagement, and to have reasonable time under the circumstances for his attorney to prepare a motion for a new trial so as to properly and fairly present the errors claimed to have been committed on the trial. The case being a capital one, and as the judgment if enforced will deprive a human being of his life, we have deemed it our duty to look into the record for the sole purpose of ascertaining whether or not such fundamental error was committed on the trial as to deprive the defendant of his constitutional right to a fair trial; and in doing so we have followed the humane rule adopted by other appellate courts, by considering some errors which appear to us to be fundamental, although not shown by the record to have been excepted to at the time.

Being convinced that the defendant did not have a fair trial, the judgment of the district court will have to be reversed and the cause remanded for a new trial; and it is so ordered.                                   *Reversed.*

POTTER, C. J., concurs..

SCOTT, J., did not sit.

