67 239
669 627

THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. GIOVANNI BONOFIGLIO, PLAINTIFF IN ERROR.

Argued December 2, 1901—Decided December 9, 1901.

1. Under the law of this state a person, upon whom an attempt to rob is being made, is justified in taking the life of his assailant, even when other and less radical means would render the attempt abortive. His right to kill is absolute.

2. On an indictment for murder the presence of a specific intent to take life is not, standing alone, conclusive that the homicidal act was done with deliberation and premeditation.

3. In defending himself from an assault made upon him, a person is justified in taking the life of his adversary when that act is, or reasonably appears to be, necessary in order to preserve his own life, or to protect himself from serious bodily harm.

On error to the Atlantic Oyer and Terminer.

For the plaintiff in error, *Charles C. Black.*

For the state, *Joseph E. P. Abbott,* prosecutor of the pleas.

. The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This writ of error brings here for review a conviction of Bonofiglio, the defendant below, of the crime of murder in the first degree, committed in the shooting to death of one Rafoele di Pasquale. The defence set up by him at the trial was that the homicide was a justifiable one for two reasons—*first,* because the killing was done by him in resisting a robbery which the deceased and his brother Constantine were attempting to commit upon him; and *second,* because it was done in self-defence. The principal ground upon which the validity of the conviction is attacked is that the trial judge erred in his instruction to the jury upon the subject of the right of one person to kill another who is engaged in an attempt to commit a robbery. The judge having first accurately defined what constituted, in law, an attempt to commit the crime of robbery, proceeded to instruct the jury, in addition, as follows: "It is a settled principle that where such a defence (*i. e.,* that the homicide occurred in resisting an attempt to commit a robbery) is set up as an excuse for taking the life of another, the killing having been shown, the burden of establishing it is upon the accused, who must show to the satisfaction of the jury a situation and circumstances under which such right to take life could be lawfully exercised, subject to the right of the accused to have the benefit of all reasonable doubt after the whole case is in.

This means that the defendant must show, among other things, in justification, that an attempt to rob him was actually made, and such an attempt as comes within the requirements of the law as I have stated it. And if it be thus established that the prisoner, at the time that he shot the deceased, honestly, and without negligence on his part, believed that the deceased was in the process of committing a robbery of his person, in the sense that I have defined that offence, which could only be resisted by the death of his assailant, then the defendant is excused in having killed the deceased, and should be acquitted."

The trial judge, in this instruction to the jury, failed to clearly distinguish between a homicide done in resisting an attempt to rob, actually in process of execution, and one which occurs where the party killing was justified in believing that such an attempt was being made, although it is shown subsequently that the fact was otherwise. In the former case the person upon whom the attempt is being made is not required to retreat or to use other and less radical means than the killing of his assailant to render the attempt abortive, even though such means may be resorted to with entire safety to himself, and would, manifestly, be successful. His right to kill is absolute. Our statute (*Crimes act,* § 110; *Pamph. L.* 1898, *p.* 825) declares that "any person who shall kill another by misadventure * * * or who shall kill any person attempting to commit arson, burglary, murder, rape, robbery or sodomy shall be guiltless and totally acquitted and discharged." Nor does this enactment inject a new feature into the law of homicide; it is merely declaratory of the common law. Hawkins, in his treatise on the *Pleas of the Crown,* thus states the rule of the common law upon this subject: "The killing of a wrong-doer may be justified in many cases; as where a man kills one who assaults him in the highway to rob or murder him; or the owner of a house, or any of his servants or lodgers, &c., kills one who attempts to burn it, or to commit in it murder, robbery or other felony; or a woman kills one who attempts to ravish her." 1 *Hawk. P. C.,* ch. 28, § 21. So, too, Hale declares that, "at common law, if

a thief had assaulted a man to rob him, and he had killed the thief in the assault, it had been *se defendendo;* but yet he had forfeited his goods as some have thought (11 *Co. Rep.* 82 *b* ), though other books be to the contrary. But now, by the statute of 24 *Hen. VIII., c.* 5, 'if any person attempts any robbery of any person in or near any common highway, cartway, horseway or footway, or in their mansion-house, or do attempt to break any mansion-house in the nighttime, and shall happen to be slain by any person or persons, &c. (though a lodger or servant), they shall, upon their trial, be acquitted and discharged in like manner as if he had been acquitted of the death of such person.' " *Hale P. C.* 487.

The necessary effect of the instruction complained of upon the jury was to leave their minds under an erroneous impression that in order to be entitled to an acquittal, the burden was upon the prisoner, not only to establish that an attempt was being made to rob him, but that he was justified in believing that such attempt could only be thwarted by the killing of his assailant. That the instruction was inaccurate has been pointed out; that the error was injurious to the defendant is apparent. For this reason the conviction must be set aside and a new trial directed.

Our attention has been called to two other inaccuracies in the charge to the jury; and, although neither of them is made the subject of an exception, we deem it advisable to refer to them, in view of the fact that the case is to be retried. It is proper, however, in this connection, to say that neither of them originated with the trial judge, but resulted from his accepting as accurate certain rules of the law of homicide contained in the published opinions of our judges.

The first of these inaccuracies appears in the instruction of the judge concerning the different degrees of criminal homicide. After stating that, by our statute, murder which is perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, is murder in the first degree, the court proceeded as follows: "I instruct you that the distinguishing feature of the crime of murder in the first degree is the presence in the party charged

therewith of an intent to take life. No particular length of time need intervene between the formation of the purpose to kill and its execution. It is not necessary that the deliberation and premeditation should continue for an hour or a minute. It is enough that the design to kill be fully conceived and purposely executed. The law is that wherever there is, in committing homicide, a specific intention to take life, there is, in the language of the statute, a willful, deliberate and premeditated killing, and the offence in that case is murder in the first degree."

This portion of the charge is an excerpt from the opinion of the Supreme Court, delivered by Chief Justice Green, in the case of *Donnelly* v. *State, 2 Dutcher* 463, 510. The doctrine enunciated in the latter part of the excerpt, however, did not originate with him, but was adopted from the opinion of the Court of Appeals of New York, in the case of *People* v. *Clark, 7 N. Y.* 385, and *Whart. Cr. L.,* § 1084, both of which he cites.

When the Donnelly case came into this court, on a review of the judgment of the Supreme Court, it was said that Chief Justice Green "succinctly and accurately stated the law in the following words: 'To constitute murder in the first degree there must be an intention to take life. No particular length of time need intervene between the formation of the purpose to kill and its execution. It is not necessary that the deliberation and premeditation should *continue* for an hour or a minute. It is enough that the design to kill be fully conceived and purposely executed.'" *Donnelly* v. *State, 2 Dutcher* 616. It is to be observed that the further declaration that "wherever there is, in committing homicide, a specific intention to take life, there is a willful, deliberate and premeditated killing, and the offence is murder in the first degree," was not included in what was accepted by this court as an accurate statement of the law; and, presumably, this omission occurred advisedly, for the construction thus put upon the words "deliberate" and "premeditated" nullifies each of them, and makes every homicide murder in the first degree when the killing is willful. This is manifest, for the word "willful," although broader in

its signification than "intentional," embraces the latter in its meaning. A reading of our statute shows that the legislature, when it used the words "deliberate" and premeditated," meant that something more than the bare intent to kill should exist in order to constitute murder in the first degree, for it first specified two cases of homicide in which both deliberation and premeditation are present to a marked degree, viz., by the administration of poison and by lying in wait, and then declared that murder perpetrated by *any other kind* of willful, deliberate and premeditated killing should be murder of the first degree. The specification of these two cases is significant; it emphasizes the meaning which the legislature intended should be given to the words "deliberate" and "premeditated."

In our opinion, notwithstanding the great respect we have for the learning and accuracy of statement of the distinguished jurist who delivered the opinion of the Supreme Court in the Donnelly case, the presence of a specific intent to take life is not, standing alone, conclusive that the homicidal act was done with deliberation and premeditation.

And this seems to be the present view of the New York Court of Appeals, notwithstanding the decision in *People* v. *Clark, supra.* In the case of *People* v. *Majone,* 91 *N. Y.* 211, Earl, C., says: "Under the statute [defining murder in the first degree] there must be not only an intention to kill, but there must also be a deliberate and premeditated design to kill. Such design must precede the killing by some appreciable space of time. But the time need not be long. It must be sufficient for some reflection and consideration upon the matter for the choice to kill or not to kill and for the formation of a definite purpose to kill. And when the time is sufficient for this, it matters not how brief it is." The same statement of the law appears in the later case of *People* v. *Schmidt,* 168 *Id.* 568.

The second inaccuracy appears in the instruction to the jury on the law of self-defence, the judge stating that "before a person can avail himself of the defence that he used a weapon in defence of his life he must satisfy the jury that that defence was necessary to protect his own life, or to protect himself

from such serious bodily harm as would give him reasonable apprehension that his life was in immediate danger." This instruction was in accordance with the rule laid down in 3 *Russ. Cr. & M.* 208, cited in the opinion of Mr. Justice Depue in the case of *Brown* v. *State,* 33 *Vroom* 666, 708, in discussing the law of self-defence.

A reading of the opinion, however, will show that the rule was not accepted by the learned justice as entirely accurate, for he follows its citation almost immediately by a reference to the opinion in the case of *State* v. *Wells, Coxe* 424, in which the rule is stated to be that "no man is justified or excusable in taking the life of another unless the necessity for so doing is apparent as the only means of avoiding his own destruction or some great injury."

The rule laid down in Coxe has always been accepted by our courts as an accurate statement of the right to take life in self-defence, and it will be perceived that it is considerably broader than the rule laid down in Russell, the latter author declaring that the bodily harm which is threatened, and which a man is justified in protecting himself against by taking the life of his assailant, must be so serious as to cause a reasonable apprehension that his own life is in immediate danger. This limitation has no existence in New Jersey. Here a man may protect himself, even to the extent of taking the life of his adversary, when that act is, or reasonably appears to be, necessary in order to preserve his own life or to protect himself from serious bodily harm.

The judgment under review should be reversed.

DIXON, J. My dissent from the judgment rendered in this case is not caused by any dissent from the doctrines stated in the opinion delivered by the Chief Justice. I concur in the principles there expressed.

*For affirmance*—THE CHANCELLOR, DIXON, GARRETSON. 3.

*For reversal*—THE CHIEF JUSTICE, VAN SYCKEL, GARRISON, COLLINS, FORT, PITNEY, KRUEGER, ADAMS, VREDENBURGH, VOORHEES, VROOM. 11.