(July 1, 1922.)

## STATE, Respondent, v. DONG SING and LO MING, Appellants.

[208 Pac. 860.]

HOMICIDE — EVIDENCE — GARMENTS OF DECEASED — ADMISSIBILITY — PREJUDICIAL REMARKS BY COUNSEL—PENALTY—WHEN MATTER FOR JURY — INSTRUCTIONS — IMPEACHMENT — DEGREES OF MURDER — MALICE—PREMEDITATION—REASONABLE DOUBT.

1. Articles of clothing worn at the time of the crime by the person injured or killed are admissible in evidence, provided they illustrate or throw light on some issue, and provided they are properly identified and are shown to be in substantially the same condition as at the time of the offense.

2. In a criminal case in which the jury may fix the penalty it is necessary for the court to instruct the jury what penalty is provided by the law, but it is not proper to convey to the jury information as to the penalty in case of offenses the punishment for which is determined only by the court.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. F. J. Cowen, Judge Presiding.

Appellants were convicted of the crime of murder in the first degree. *Affirmed.*

Perky & Brinck and C. H. Edwards, for Appellants.

Admission of gruesome exhibits, when not necessary to establish a material fact, is erroneous as tending to inflame the jury. (*Flege v. State,* 93 Neb. 610, 142 N. W. 276, 47 L. R. A., N. S., 1106; *McKay v. State,* 90 Neb. 63, Ann. Cas. 1913B, 1034, 132 N. W. 741, 39 L. R. A., N. S., 714; Id., 91 Neb. 281, Ann. Cas. 1913B, 1034, 135 N. W. 1024, 39 L. R. A., N. S., 720; *State v. McKnight,* 21 N. M. 14, 153

---

Publisher's Note.

1. Admissibility in evidence of clothing worn by deceased at time of killing, see note in Ann. Cas. 1912B, 775.

Pac. 76, 82; *State v. Porter,* 276 Mo. 387, 207 S. W. 774; *Crenshaw v. State,* 48 Tex. Cr. 77, 85 S. W. 1147; *Melton v. State,* 47 Tex. Cr. 451, 83 S. W. 822; *Williams v. State,* 61 Tex. Cr. 356, 136 S. W. 771; 2 Wharton, Crim. Ev., 10th ed., sec. 941.)

In a prosecution for homicide the court shall correctly charge the jury on all degrees of the offense. (*State v. Phinney,* 13 Ida. 307, 12 Ann. Cas. 1079, 89 Pac. 634, 12 L. R. A., N. S., 935; *People v. Dunn,* 1 Ida. 74; *State v. Lindsey,* 19 Nev. 47, 3 Am. St. 776, 5 Pac. 822.) A correct instruction does not cure an erroneous instruction on the same subject. (*State v. Clayton,* 83 N. J. L. 673, 85 Atl. 173; *State v. Fuller,* 114 N. C. 885, 19 S. E. 797; *People v. Valencia,* 43 Cal. 552, 555; *Binns v. State,* 66 Ind. 428, at 434; *State v. Fowler,* 13 Ida. 317, 89 Pac. 757; *State v. Webb,* 6 Ida. 428, 55 Pac. 892.)

Malice aforethought does not involve premeditation or deliberation. (C. S., sec. 8074, subd. 4; Wharton, Homicide, 3d ed., sec. 134; 2 Bishop, Crim. Law, 7th ed., secs. 677, 726; McClain, Crim. Law, sec. 329; *Ross v. State,* 8 Wyo. 351, 57 Pac. 924.)

Malice should not be defined as including anger. (*State v. Rogers,* 30 Ida. 259, 163 Pac. 912.)

It is error to instruct that to constitute first degree murder there need be no appreciable time between the forming of the intent and the act. (*State v. Rutten,* 13 Wash. 203, 43 Pac. 30, 32; *State v. Moody,* 18 Wash. 165, 51 Pac. 356; *State v. Bridgham,* 51 Wash. 18, 97 Pac. 1096, 1098; *State v. Arata,* 56 Wash. 185, 21 Ann. Cas. 242, 105 Pac. 227, 228; *State v. Anselmo,* 46 Utah, 137, 148 Pac. 1071; *Martin v. State,* 119 Ala. 1, 25 So. 255; *Donnelly v. State,* 26 N. J. L. 601; *State v. Bonofiglio,* 67 N. J. L. 239, 91 Am. St. 423, 52 Atl. 712, 54 Atl. 99; *State v. Deliso,* 75 N. J. L. 808, 69 Atl. 218, 222; *State v. Clayton,* 83 N. J. L. 673, 85 Atl. 173; *State v. Foster,* 130 N. C. 666, 89 Am. St. 876, 41 S. E. 284; *State v. Banks,* 143 N. C. 652, 57 S. E. 174; *Bivens v. State,* 11 Ark. 455, 461; *Gilchrist v. State,* 100 Ark. 330, 140 S. W. 260; *People v. Moore,* 8 Cal. 90, 93; *People v.*

*Nichol,* 34 Cal. 211, 214; *People v. Long,* 39 Cal. 694, 696; *People v. Maughs,* 149 Cal. 253, 86 Pac. 187; *Commonwealth v. Tucker,* 189 Mass. 457, 76 N. E. 127, 7 L. R. A., N. S., 1056; *State v. Phillips,* 118 Iowa, 660, 92 N. W. 876.)

Or that the intent, deliberation or premeditation need not exist for any length of time. (*Parker v. State,* 24 Wyo. 491, 161 Pac. 552.)

The court erred in giving instruction No. 33, in regard to the credibility of an impeached witness. (*Rogers v. State,* 8 Okl. Cr. 226, 127 Pac. 365; *Commonwealth v. Clune,* 162 Mass. 206, 38 N. E. 435; *State v. Musgrave,* 43 W. Va. 672, 28 S. E. 813.)

The concurrence of will, deliberation and premeditation requisite for a first degree murder must not only precede, but must result in the killing. (*People v. Maughs,* 149 Cal. 253, 86 Pac. 187; *Parker v. State,* 24 Wyo. 491, 161 Pac. 552.)

It is improper to inform the jury as to the punishment for an offense or grade of an offense, excepting where the jury has the right to fix the punishment. (*People v. Johns,* 19 Ill. App. 367; *People v. Prewett,* 40 Cal. App. 416, 180 Pac. 844.)

It is error for counsel to state to the jury his personal opinion of the guilt of the accused. (*State v. Webb,* 254 Mo. 474, 162 S. W. 622, 628; *Broznack v. State,* 109 Ga. 514, 35 S. E. 123; *Nixon v. State,* 14 Ga. App. 261, 80 S. E. 513; *Raggio v. People,* 135 Ill. 533, 26 N. E. 377; *Reed v. State,* 66 Neb. 184, 92 N. W. 321; *State v. Clark,* 114 Minn. 342, 131 N. W. 369, 370; *State v. Gunderson,* 26 N. D. 294, 144 N. W. 659.)

Roy L. Black, Attorney General, Jas. L. Boone, Assistant, J. H. Hawley and E. S. Delana, Pros. Atty., for Respondent.

The court must give judgment without regard to technical errors, etc., which do not affect the substantial rights of the parties. (Secs. 9084, 9191, C. S.)

It is not error to admit in evidence the bloody effects of a deceased in order to establish the state's original case. (*People v. Haydon,* 18 Cal. App. 543, 123 Pac. 1102, 1114; *State v. Moore,* 80 Kan. 232, 102 Pac. 475; *State v. Stansberry,* 182 Iowa, 908, 166 N. W. 359; *State v. Porter,* 276 Mo. 387, 207 S. W. 774; *Watson v. State,* 84 Tex. Cr. 115, 205 S. W. 662; *Terry v. State,* 203 Ala. 99, 82 So. 113; *People v. Wolff,* 182 Cal. 728, 190 Pac. 22; *Sizemore v. Commonwealth,* 189 Ky. 46, 224 S. W. 637; *Locklear v. State,* 17 Ala. App. 597, 87 So. 708; *Larmon v. State* (Fla.), 88 So. 471; *State v. McKnight,* 21 N. M. 14, 153 Pac. 76; *McKinney v. State,* 80 Tex. Cr. 31, 187 S. W. 960; *Blazka v. State,* 105 Neb. 13, 178 N. W. 832.)

Instructions must be read as a whole. (*Kennon v. Gilmer,* 5 Mont. 257, 51 Am. Rep. 45, 5 Pac. 847; *State v. Corcoran,* 7 Ida. 220, 61 Pac. 1034; *State v. Bond,* 12 Ida. 424, 86 Pac. 43; *State v. Neil,* 13 Ida. 539, 90 Pac. 860, 91 Pac. 318; *Barrow v. B. R. Lewis Lbr. Co.,* 14 Ida. 698, 95 Pac. 682; *Anderson v. Great Northern R. Co.,* 15 Ida. 513, 99 Pac. 91; *Just v. Idaho Canal etc. Co.,* 16 Ida. 639, 133 Am. St. 140, 102 Pac. 381; *Tilden v. Hubbard,* 25 Ida. 677, 138 Pac. 1133; *Osborn v. Cary,* 28 Ida. 89, 152 Pac. 473; *Whitney v. Cleveland,* 13 Ida. 558, 91 Pac. 176; *People v. Cleveland,* 49 Cal. 578; *People v. Armstrong,* 114 Cal. 570, 46 Pac. 611; *State v. Pettit,* 33 Ida. 326, 193 Pac. 1015; 14 R. C. L., sec. 76, p. 820; *State v. Curtis,* 29 Ida. 724, 727, 161 Pac. 578; *State v. Nolan,* 31 Ida. 71, 169 Pac. 295; *State v. Petrogalli,* 34 Ida. 232, 200 Pac. 119; *Reed v. State,* 102 Ark. 525, 145 S. W. 206; *Leech v. State,* 63 Tex. Cr. 339, 139 S. W. 1147.)

It is not error to instruct that malice aforethought means an act is done with malice and premeditation. (Michie, Homicide, sec. 11; *Thiede v. Utah,* 159 U. S. 510, 16 Sup. Ct. 62, 40 L. ed. 237; Wharton, Homicide, 3d ed., sec. 82; *State v. Vaughan,* 200 Mo. 1, 98 S. W. 2; *Clark v. Commonwealth,* 111 Ky. 443, 63 S. W. 740; *Green v. United States,* 7 Ind. Ter. 733, 104 S. W. 1159; *State v. Primrose,* 2 Boyce

(Del.), 164, 77 Atl. 717; *Green v. United States,* 2 Okl. Cr. 55, 101 Pac. 112; note, 38 L. R. A., N. S., 1054.)

An instruction which states "malice includes not only anger, hatred and revenge but also any other unlawful and unjustifiable motive" is not erroneous, especially when read with the balance of the instructions. (*State v. Wetter,* 11 Ida. 433, 83 Pac. 341; *Commonwealth v. Webster,* 5 Cush. (Mass.) 295, 52 Am. Dec. 711; *Jackson v. People,* 18 Ill. 269; *State v. Dolan,* 17 Wash. 499, 50 Pac. 472; *McCoy v. People,* 175 Ill. 224, 51 N. E. 777; *State v. Privitt,* 175 Mo. 207, 75 S. W. 457.)

An entire charge on a particular point must be read together. (*People v. Bernard,* 2 Ida. 193, 10 Pac. 30; *Loy v. State,* 26 Wyo. 381, 185 Pac. 796; *Johnson v. State* (Tex. Cr.), 216 S. W. 192.)

The time between the intent to kill and the act of killing need not exist any length of time. (*State v. Shuff,* 9 Ida. 115, 72 Pac. 664; *People v. Sanchez,* 24 Cal. 17; *People v. Yee Foo,* 4 Cal. App. 730, 89 Pac. 450; *People v. Bealoba,* 17 Cal. 389; *People v. Machuca,* 158 Cal. 62, 109 Pac. 886; *People v. Suesser,* 142 Cal. 354, 75 Pac. 1093; *People v. Nichol,* 34 Cal. 211, 215; *People v. Iams,* 57 Cal. 115; *People v. Williams,* 43 Cal. 344; *People v. Webber,* 149 Cal. 325, 86 Pac. 671; *State v. Thomas,* 118 N. C. 1113, 24 S. E. 431; *Perugi v. State,* 104 Wis. 230, 76 Am. St. 865, 80 N. W. 593; *People v. Clark,* 7 N. Y. 385; *Donnelly v. State,* 26 N. J. L. 463; *Thaniel v. Commonwealth* (Va.), 111 S. E. 259; *McAdams v. State,* 25 Ark. 405; *Ross v. State,* 8 Wyo. 351, 57 Pac. 924; *Commonwealth v. Reed,* 234 Pa. St. 573, 83 Atl. 601.)

Instruction No. 28 is correct. (*State v. Moon,* 20 Ida. 202.)

An instruction is not erroneous which charges that the jury may disregard the testimony of any witness who has wilfully testified falsely on any material matter unless the evidence of such witness be corroborated by other witnesses or evidence. (*State v. Morris,* 40 Utah, 431, 122 Pac. 380; *State v. Reese,* 43 Utah, 447, 135 Pac. 270; *State v. Dye,* 44

Utah, 190, 138 Pac. 1193; *State v. Hillstrom,* 46 Utah, 341, 150 Pac. 935; *Cole v. State* (Okl. Cr.), 195 Pac. 901; *Peak v. People,* 76 Ill. 289; *People v. LeMorte,* 289 Ill. 11, 124 N. E. 301; *Miller v. State,* 106 Wis. 156, 81 N. W. 1020.)

The fact that the court may have given an erroneous instruction is not necessarily reversible error. It must be assumed that the jury was composed of reasonable men, of average intelligence, that they based their verdict on the evidence, and that if they could not reasonably have arrived at any other result they were not influenced by such erroneous instruction. (*State v. Sims, ante,* p. 505, 206 Pac. 1045.)

A witness may be impeached by statements made out of court. (Sec. 8039, C. S.; *State v. Anthony,* 6 Ida. 383, 55 Pac. 884; *State v. Harness,* 10 Ida. 18, 76 Pac. 788; *State v. Fowler,* 13 Ida. 317, 89 Pac. 757; *People v. Corey,* 8 Cal. App. 720, 97 Pac. 907; *White v. New York etc. R. Co.,* 142 Ind. 648, 42 N. E. 456; *Godair v. Ham Nat. Bank,* 225 Ill. 572, 116 Am. St. 172, 8 Ann. Cas. 447, 80 N. E. 407.)

It is not error for the court to instruct as to the various punishments which may be levied. (*People v. Dice,* 120 Cal. 189, 52 Pac. 477.)

Where an improper remark is made and promptly withdrawn or its effect explained away, no prejudicial error is committed. (16 C. J. 917, 918.)

A prosecutor may argue the guilt of a defendant where such opinion is based on the evidence. (16 C. J. 908; *People v. Bracklis* (Cal. App.), 200 Pac. 1062.)

DUNN, J.—Appellants were jointly informed against by the prosecuting attorney of Ada county for the killing of one Wong Bock Sing. They were convicted of murder of the first degree and sentenced to life imprisonment. They moved for a new trial, which was denied, and have appealed from both the judgment and the order denying a new trial.

Appellants assign as error the introduction in evidence of the garments worn by Wong Bock Sing at the time he was killed, such garments being bloody and having in them cer-

tain holes which the state claimed to have been made by some of the shots which killed the deceased. The contention of appellants is that there was no necessity for the introduction of these garments in view of the testimony that had been offered by the state as to the killing, and that they could have no other effect than that of arousing the prejudices and passions of the jury. We are unable to say that there was no necessity for the introduction of these exhibits; in fact, in the prosecution of a case of this kind counsel for the state usually and properly feel that it is necessary to introduce all the evidence available in making out the state's case. The plea of not guilty puts in issue all of the material allegations of the information and the state cannot anticipate what evidence may be offered or what admissions may be made by the defense, and cannot safely rely upon the defense to make any admissions. It has been repeatedly held by the courts that "Articles of clothing worn at the time of the crime by the person injured or killed are admissible in evidence, provided they illustrate or throw light on some issue, and provided they are properly identified and are shown to be in substantially the same condition as at the time of the offense." (16 C. J., p. 619, sec. 1226e; *State v. Moore*, 80 Kan. 232, 102 Pac. 475; *State v. Stansberry*, 182 Iowa, 908, 166 N. W. 359; *State v. Porter*, 276 Mo. 387, 207 S. W. 774; *Watson v. State*, 84 Tex. Cr. 115, 205 S. W. 662; *Sizemore v. Commonwealth*, 189 Ky. 46, 224 S. W. 637; *Blazka v. State*, 105 Neb. 13, 178 N. W. 832.)

In this case the garments offered in evidence were clearly admissible. The state was attempting to show the participation of the two defendants in the shooting that killed the deceased, and the bullet holes in the clothing tended directly to establish the contention of the state in that respect.

At the time of the arrest of Dong Sing, about 9 o'clock on the evening of the homicide, he was taken in an automobile from the place where he was arrested to the police station. At the time of his arrest he was searched for weapons by the person who arrested him and also by the police officer into whose charge he was given; and no revol-

ver was discovered on his person. He rode in the back seat of the machine with the officer who had him in charge. About 6 o'clock the next evening a man cleaning up this automobile found a 38-caliber revolver with two empty chambers sticking behind the cushion of the back seat where Dong Sing had ridden the night before. There was also evidence tending to show the existence of three 38-caliber bullets at the scene of the killing, one of such bullets being discovered several months afterward. Between the time of Dong Sing's riding there and the time of the finding of the revolver, the automobile, which was for hire, had been in use to some extent, certain police officers having used it for a trip to South Boise. Over the objection of appellants the court admitted the revolver in evidence. There was no error in this action of the court. Sufficient was shown to entitle the revolver to go to the jury, and in determining its value as evidence it was their duty to consider the length of time between Dong Sing's riding in the automobile and the finding of the revolver and the fact that in the meantime the automobile had been used in the carrying of other passengers.

Appellants complain of the giving of certain instructions, but it will not be necessary to set out such instructions in full in each case.

In instruction No. 15, in which the court defined certain words, this language was used: "and 'malice aforethought' means that the act was done with malice and premeditation." Instruction No. 17 also includes a similar statement. Counsel for appellants appear to assume that in these instructions the court was undertaking to distinguish between murder of the first degree and murder of the second degree. In this they are in error. The attempt seems to have been only to impress upon the jury the elements necessary to make up the offense of murder of the first degree. The statement that malice aforethought involves malice and also premeditation of the killing is misleading. While malice aforethought necessarily means the existence of malice in the mind of the accused at and prior to the time of the com-

mission of the offense, it does not necessarily involve premeditation of the killing as that term is used in C. S., sec. 8211. Malice aforethought is a necessary element of murder, whether it be first or second degree, but premeditation as used in this statute is not included in murder of the second degree.

We are unable to see, however, just how this erroneous statement regarding malice aforethought was injurious to defendants. In instructions Nos. 11 and 24, which are the only instructions in which the court undertook to define both degrees of murder, there is a correct definition of each and the distinction between the two is properly pointed out.

Appellants further object to instruction No. 17 on account of this language: "There need be no appreciable space of time between the formation of the intent to kill and the killing. They may be as instantaneous as successive thoughts." It may be admitted that this form of expression might be somewhat improved, but, notwithstanding that fact, we think it safe to say that it conveyed to the minds of the jury a correct understanding of the law on the subject of deliberation and premeditation when taken in connection with the other instructions given by the court. The charge as a whole 'made perfectly clear to the jury that there could be no conviction of appellants of murder of the first degree unless there was an unlawful killing of the deceased with malice aforethought after appellants had deliberately and premeditatedly formed the intention to commit such act. Granted that the deliberate and premeditated intention to commit murder has first been formed in the mind of the slayer, such intention may be executed instantly and he will be guilty of murder of the first degree. (Wharton's Homicide, 3d ed., 164; 1 McClain's Cr. Law, sec. 358; *Van Houton v. People,* 22 Colo. 53, 43 Pac. 137, 142; ·*People v. Hunt,* 59 Cal. 430, 431, 435; *Binns v. State,* 66 Ind. 428, 433; *State v. Shuff,* 9 Ida. 115, 72 Pac. 664.)

Instruction No. 17 further said: "It is only necessary that the act of killing be preceded by the concurrence of will, deliberation and premeditation on the part of the

slayer; but where there is no time or opportunity for deliberate thought, then the unlawful killing cannot be murder in the first degree.'' Appellants hold this instruction to be erroneous for the reason that ''It fails to state that the killing must be the result of the concurrence of will, deliberation and premeditation,'' citing *People v. Maughs,* 149 Cal. 253, 86 Pac. 187, and *Parker v. State,* 24 Wyo. 491, 161 Pac. 552.

We must assume that the jury were men of ordinary intelligence, and that they conscientiously applied such intelligence to an examination of the evidence under the instructions of the court. If they did they could not have failed to understand that in order to convict appellants of murder of the first degree, the murder of deceased must have been the result of the concurrence of will, deliberation and premeditation on the part of appellants, notwithstanding a specific statement to that effect was lacking.

Instruction No. 16 as given by the court begins with the following sentence: ''Malice includes not only anger, hatred and revenge, but every other unlawful and unjustifiable motive.''

This expression was criticised by this court as erroneous in considering a similar instruction in the case of *State v. Rogers,* 30 Ida. 259, at pages 266, 267, 163 Pac. 912.

The most serious objection to the instructions given is that taken to instruction No. 23, which reads as follows:

''No. 23. The jury are instructed that while the law requires, in order to constitute murder of the first degree, that the killing shall be wilful, deliberate and premeditated, still it does not require that the wilful intent, deliberation or premeditation shall exist for any length of time before the crime is committed. It is sufficient if it appears from the evidence beyond a reasonable doubt that there was a design and determination to kill distinctly formed in the mind of defendant at any moment before, or at the time, the blow was struck or the killing took place.''

The objections to this instruction go to the statement that the law does not require that ''the wilful intent, deliberation or premeditation shall exist for any length of time

35 Idaho—40

before the crime is committed'' and to the use of the words "at the time" in relation to the existence of a design and determination to kill.

As to the first objection it may be said that while frequently the word "length" in such an instruction as this is preceded by the word "particular" or "definite" or some such word, we think the instruction as it was given conveyed to the jury the meaning that no special length of time was required for the existence of such intent. In discussing in their brief "malice aforethought" as implying an intentional act as distinguished from an act done on sudden provocation, counsel for appellants quote with approval sec. 329 of vol. 1, McClain's Criminal Law, which contains this statement: "It is not necessary that the intent shall have been entertained for any length of time." Evidently counsel understood this expression, "any length of time," just as the jury must have understood it, meaning any special or particular length of time.

If nothing more appeared than that at the instant the blow was struck or the killing took place there was an intention to kill, there being no time for deliberation or premeditation, the killing would not be murder of the first degree, and it is the contention of counsel for defendants that approval of the expression, "It is sufficient if . . . . there was a design and determination to kill distinctly formed in the mind of defendant at any moment before, or at the time, the blow was struck or the killing took place," eliminates deliberation and premeditation as essential to murder of the first degree.

The word "distinctly" means "clearly," "plainly." "Design" means "a plan or scheme formed in the mind of something to be done." "Determination" means "purpose," "conclusion," "fixed resolution." (Webster's New International Dictionary.)

If such design and determination were "distinctly formed in the minds of defendants" at the time they fired the shots that killed deceased, such design and determination could not have been in process of formation while the shots were

being fired, but must have preceded the shooting. This, it seems to us, is the clear import of the language used in this instruction and the only meaning that the jury could reasonably have drawn from it, especially when it is remembered that it must be read and construed in connection with all of the other instructions given, and the trial judge so instructed the jury. The question is whether, when so read and construed, it can reasonably be held that the jury may have been misled by it. In this very instruction the court told the jury that in order to constitute murder of the first degree the killing must be wilful, deliberate and premeditated; in other instructions that "where there is no time or opportunity for deliberate thought, then the unlawful killing cannot be murder in the first degree"; that in order to constitute murder of the first degree there must be added to the "unlawful killing of a human being with malice aforethought" the elements of wilfulness, deliberation and premeditation; that the killing must be "done with reflection and conceived beforehand"; that it must be shown that the accused deliberated before they acted; that they premeditated the purpose to slay before the fatal blow was given; that "deliberately" means an intent to kill executed "in a cool state of the blood in furtherance of a formed design to gratify a feeling of revenge, or to accomplish some other unlawful purpose;" that "premeditatedly" means "thought of beforehand, for any length of time, however short." It would seem hardly possible, therefore, that out of so much repetition as to deliberation and premeditation the jury could have been misled by the use of the expression "at the time" in the connection in which it was used.

In the case of *Green v. State*, 51 Ark. 189, 193, 10 S. W. 266, the following instruction was given by one of the circuit courts of Arkansas in a prosecution for murder of the first degree:

"All murder which shall be perpetrated by means of poison or by lying in wait or by any other kind of *wilful, deliberate, malicious and premeditated* killing shall be deemed murder in the first degree."

"If the jury believe from the evidence beyond a reasonable doubt that the defendant, either by himself or in connection with others, inflicted the wounds or injuries on deceased, Horton, as charged in the indictment, with the intent, *formed* in the mind at the time of the injuries, to take deceased's life, and that such wounds or injuries did cause the death of deceased, they may convict of murder in the first degree."

"An unlawful act, coupled with malice and resulting in death, will not of itself constitute murder in the first degree, but in order to constitute murder in the first degree, the killing must have been *intentional, after* deliberation and premeditation."

And the supreme court of that state upheld this instruction in the following language:

"In order to constitute a homicide murder in the first degree according to these instructions, the killing must have been wilful, deliberate, malicious and premeditated; there must have been an intent to take the life of the deceased in the mind of the slayer at the time the act of killing was done; and the intent must have been formed after deliberation and premeditation. This is, in effect, telling the jury that the intent must have preceded the killing. This is the only construction which can be fairly placed upon these instructions, and, construed in that way, they are correct."

Other courts have sustained a similar instruction. (See *Donnelly v. State*, 26 N. J. L. 463, 510; Id., 26 N. J. L. 601, 616; *State v. Thomas*, 118 N. C. 1113, 24 S. E. 431; *Perugi v. State*, 104 Wis. 230, 76 Am. St. 865, 80 N. W. 593; *People v. Clark*, 7 N. Y. 385; *State v. Lang*, 75 N. J. L. 1, 66 Atl. 942; *Wright v. Commonwealth*, 33 Gratt. (Va.) 880, 892; *McDaniel v. Commonwealth*, 77 Va. 281; *Commonwealth v. Thompson* (Va.), 109 S. E. 447, 453; *Thaniel v. Commonwealth* (Va.), 111 S. E. 259, 260.)

Instruction No. 24 contained the following: "But while the purpose, the intent, and its execution may follow thus rapidly upon each other it is proper for the jury to take into consideration the shortness of such interval in consider-

ing whether such sudden and speedy execution may not be attributed to sudden passion and anger rather than to deliberation and to premeditation which must characterize the higher offense.'' This portion of a similar instruction was considered by this court in *State v. Rogers, supra,* and disapproved. It does not appear from said case, however, that the court would have considered the objectionable parts of instruction No. 16 and instruction No. 24 as sufficient, if there had been no other errors in that case, to warrant a reversal.

On the presumption that defendants were innocent of the crime charged the court gave the following instruction:

"No. 26. It is your sworn duty to commence the investigation of this case with the presumption that the defendants are innocent of the crime with which they are charged; and it is equally your duty to enter upon the consideration of each fact and circumstance in evidence having in your minds at all times the presumption that the defendants are innocent, applying to every such fact and circumstance the presumption of innocence; this presumption is not an idle form, but it is a fundamental and important part of the law of the land, and you should act upon this presumption throughout your consideration of the evidence, unless it shall have been overcome by proof of guilt so strong, credible and conclusive as to convince your minds to a moral certainty and beyond every reasonable doubt that the defendants are guilty.''

Appellants contend that by using the word ''unless'' instead of the word ''until'' in this instruction the court destroyed the meaning of the rule stated in C. S., sec. 8944: ''A defendant in a criminal action is presumed to be innocent until the contrary is proved.'' While we think the word ''until'' as used in the statute is preferable to the word ''unless,'' since that is the statutory expression, still we think no such disastrous result as suggested by appellants could have followed from the use of the word ''unless.'' Taking all of the instructions together and considering them as one charge, which is the rule universally laid down by the

courts, and the one expressly given to the jury in this case, we think the jury could not have failed to understand that the presumption of innocence attended each one of these defendants throughout the entire trial, and that they were never at liberty to determine whether such presumption had been overcome until all of the evidence was in and the case finally submitted to them. In addition to the formal written charge given by the court to the jury when the case was submitted to them the record shows that at each adjournment the court admonished the jury in accordance with C. S., sec. 9867, that they were not to form or express any opinion upon the case until it was finally submitted to them. If this instruction were to be held erroneous, we think it would be impossible to conclude that the jury were misled by it. (*People v. Warfield,* 261 Ill. 293, 103 N. E. 979, 994.)

Appellants object to that portion of the instruction given on the subject of reasonable doubt as follows:

"No. 28. . . . . A doubt, to justify an acquittal, must be reasonable, and must arise from a candid and impartial consideration of all the evidence in the case and unless it is such that were the same kind of a doubt interposed in the graver transactions of life, it would cause a reasonable and prudent man to hesitate and pause, it would not be sufficient to authorize a verdict of not guilty."

They insist that this instruction was given in such terms as to leave the impression with the jury that the burden was not upon the state to prove the defendants guilty beyond a reasonable doubt, but to cast upon them the burden of raising a reasonable doubt in the minds of the jury. The entire instruction as given in this case has been several times considered by this court, but while it has not been approved and recommended as a model, it has in no instance been held erroneous. (*State v. Nolan,* 31 Ida. 71, 81, 82, 169 Pac. 295; *State v. Moon,* 20 Ida. 202, Ann. Cas. 1913A, 724, 117 Pac. 757; *State v. Lyons,* 7 Ida. 530, 64 Pac. 236.) The great difficulty with this and many other instructions attempting to define this term is that the expression "reason-

able doubt" is to the ordinary mind about as simple and easily understood as it can be made, and efforts to make it more so are almost as likely to confuse as to clarify.

The court gave the following instruction, which appellants assign as error:

"No. 31. If you believe that any witness on either side of this case has wilfully testified falsely on any material matter, then you have the right to disregard the entire testimony of such witness, unless you find such evidence to be corroborated by other reliable witnesses or evidence."

The objection of appellants to this instruction is based upon the use of the word "unless." They concede that the instruction would be correct if, instead of the expression "unless you find such evidence to be corroborated by other reliable witnesses or evidence," the court had said "except in so far as you find it corroborated by other reliable witnesses or evidence." Appellants say that "by the use of the word 'unless' the court authorized the jury to disregard the entire testimony of a witness whom they believe had testified falsely on a material matter unless all of his evidence was corroborated; thus authorizing them to disregard the corroborated portions of his testimony unless all his testimony were corroborated." We think this extreme interpretation of the instruction is not warranted by the language used by the court. While the form of expression suggested is preferable to that used by the court, being substantially the same as that approved in *State v. Waln*, 14 Ida. 1, 80 Pac. 221, the instruction as given has nevertheless received the approval of courts of excellent standing. (*Peak v. People*, 76 Ill. 289; *Miller v. State*, 106 Wis. 156, 81 N. W. 1020, 1022.) The defendants were not prejudiced by the instruction as given.

Appellants complain of the giving of instruction No. 33, which reads as follows:

"No. 33. The credit of a witness may be impeached by proof that he has made statements out of court contrary to what he has testified on the trial. If you believe from the evidence that any witness has made statements out of court

at variance with the testimony given in this case, regarding any material matter testified to by such witness, and that such statement or statements were wilfully false, then the jury can totally disregard the testimony of such witness so impeached, making such false statement or statements, unless such witness is corroborated by other and credible evidence, or by circumstances introduced in evidence in the case."

Our attention has not been called to any case in which this instruction was given, and we think there can be no question that it was erroneous, for impeachment by showing statements by a witness contrary to his testimony does not require that the contrary statements shall be shown to be false. We think, however, there was no prejudice to appellants when we consider the evidence submitted to the jury. This is particularly true as to the defendant Dong Sing. The particular complaint of appellants as to this instruction rests upon certain testimony of the witness Wong Chow and the impeachment which appellants directed toward said witness. Defendant Dong Sing was in the laundry immediately before the killing of the deceased. He claims to have seen two strangers there at the time who were making a disturbance and that Bock Sing, the deceased, sent him in haste for a policeman. Appellants attempt to show that these strangers were the persons who killed the deceased and that Wong Chow, while he was confined in the jail immediately after the killing, stated to Dong Sing and others that two Japanese killed Bock Sing. Taking into consideration the admission of Dong Sing that he was in the laundry almost up to the instant when the killing took place, and his unreasonable story as to his movements and his purpose after leaving the laundry, we think the jury could not have been misled to the prejudice of appellants by this instruction.

In No. 39 the court instructed the jury with regard to the law authorizing that body to fix the punishment in case the defendants were convicted of murder in the first degree, but erroneously included in said instruction a statement as

to the penalty fixed by the law in case defendants were convicted of murder of the second degree or of manslaughter. That portion of the instruction pertaining to the penalty for murder of the second degree and manslaughter should not have been given, since the jury had no duty whatever to perform in case of conviction of either of said offenses, but it does not appear that defendants were injured by this error of the court.

Appellants complain also that one of counsel for the state in his argument to the jury expressed the opinion that appellants were guilty. The record shows that this expression of opinion was probably drawn from counsel in reply to the opinion of appellants' counsel expressed in the argument to the effect that appellants were innocent. Counsel for the state expressly based his opinion upon the evidence, and we find no error in such expression.

When we consider the character of the testimony offered in this case and the view the jury must necessarily have taken with regard to it, we are unable to see how they could have been prejudicially influenced against the appellants by reason of such errors as it must be conceded the trial court made. Appellant Lo Ming did not testify. Appellant Dong Sing admittedly was in the laundry immediately before the killing, and if his story had been believed by the jury they could have done nothing but acquit appellants. There was no room for a verdict of murder of the second degree or manslaughter. Having rejected Dong Sing's testimony, there was no alternative for the jury, if they believed the evidence offered by the state, but to find appellants guilty of murder of the first degree. In the whole record there is nothing suggestive of any fact that would warrant the conclusion that appellants could be guilty at all without being guilty of murder of the first degree. It is true the jury might arbitrarily have convicted defendants of murder of the second degree or of manslaughter, just as they might arbitrarily have acquitted defendants even though convinced beyond a reasonable doubt of defendants' guilt, but on the facts accepted by them as established by

the evidence and on their oaths as jurors they could have found no other verdict than that of murder of the first degree.

C. S., sec. 9084 provides that, "After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties"; and C. S., sec. 9191, provides that, "Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice in respect to a substantial right."

Commenting on these statutes this court has said: "The substance of these statutory provisions is that a new trial ought never to be granted, notwithstanding some mistake or even misdirection by the judge, provided the revisioning court is satisfied that justice has been done and that upon the evidence no other verdict could properly have been found." (*State v. Marren,* 17 Ida. 766, 791, 107 Pac. 993.)

There was no error in denying the motion of appellants for a new trial. The judgment and the order denying a new trial are affirmed.

Budge, J., and Flynn, Dist. J., concur.

RICE, C. J., Dissenting.—I am unable to concur. The majority opinion quotes instruction No. 23, and it will be unnecessary to repeat it here. In my opinion, the giving of this instruction was prejudicial error. Under C. S., sec. 8997, the jury has the absolute right to find a defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment, or of an attempt to commit the offense. Therefore, where the charge upon which a defendant is being tried is first degree murder, the jury may bring in a verdict of guilty of murder in the second degree or of manslaughter. It is essential under such circumstances that the jury be correctly

instructed as to the distinctions between the degrees of homicide.

The statement contained in instruction No. 23 that "it is sufficient if it appears from the evidence beyond a reasonable doubt that there was a design or determination distinctly formed in the mind of the defendant at any moment before or *at the time* the blow was struck or the killing took place," is not merely an inaccuracy in an instruction defining first degree murder. It excludes the necessary elements of deliberation and premeditation. It abolishes the distinction between first and second degree murder, and between murder and voluntary manslaughter.

While it is true that there are decisions of courts of high standing, which are entitled to great respect, sustaining such an instruction, or one in substance and effect the same, the authorities are not uniform in upholding it.

In the case of *State v. Clayton,* 83 N. J. L. 673, 85 Atl. 173, we find the following:

"Upon the question of murder in the first degree, the following instruction to the jury is brought before us upon error assigned on a bill of exceptions: 'If the shooting was done with deliberation and premeditation, if you find that beyond a reasonable doubt as I told you, then the crime is murder in the first degree. Now, as to the premeditation and deliberation, there need be no particular interval of time, as I told you. The human mind acts so quickly that if you find that this man shot, and had the interval of time, however short, to form that intention, it is enough if he formed the intention and carried it out. That is what is meant by deliberation in the law.'

"Of the error of this instruction there can be no doubt. In so far as it instructed the jury that the formation and execution of an intention to kill was what was meant by deliberation in the law it was directly opposed to what we decided in *State v. Deliso,* 75 N. J. L. 808, 69 Atl. 218; and in so far as it instructed them that the interval of time, however short, required to form the intention to kill included sufficient time for premeditation and deliberation, it was op-

posed to what we decided in *State v. Mangano,* 77 N. J. L. 544, 72 Atl. 366, as well as to the plainest dictates of reason, for, however brief may be the interval of time required for the performance of any one of the three mental acts involved in murder in the first degree, viz., premeditation, wilfulness (i. e., intention), and deliberation, the fact remains that they are not only distinct mental acts, but also that one succeeds another as was pointed out in *State v. Deliso.* They cannot therefore be synchronous as is implied in this instruction.'' (See, also, *Donnelly v. State,* 26 N. J. L. 601; *State v. Bonofiglio,* 67 N. J. L. 239, 91 Am. St. 423, 52 Atl. 712, 54 Atl. 99; *State v. Deliso,* 75 N. J. L. 808, 69 Atl. 218; *Nye v. People,* 35 Mich. 16; *State v. Banks,* 143 N. C. 652, 57 S. E. 174; *People v. Long,* 39 Cal. 694; *Ross v. State,* 8 Wyo. 351, 57 Pac. 924; *Fahnestock v. State,* 23 Ind. 231; *State v. Phillips,* 118 Iowa, 660, 92 N. W. 876; *Parker v. State,* 24 Wyo. 491, 161 Pac. 552.)

The instruction should not be sanctioned in this state, especially in view of the fact that a verdict of guilty of murder in the first degree may carry with it the death penalty.

Instruction No. 33 is also quoted in the majority opinion. This instruction is clearly erroneous, since proof of contradictory statements made out of court is sufficient to impeach a witness, without a further finding by the jury that such statements were wilfully and intentionally false. (C. S., sec. 8039.) This instruction in very many cases would deprive a party of the benefit gained by the impeachment of a witness, and might be highly prejudicial.

Lee, J., concurs in the dissenting opinion.

Petition for rehearing denied.